S. M. SMITH *v.* W. J. FOWLER.

PLEADINGS. *How far binding.* While the doctrine of estoppel applies with peculiar force to admissions or statements made upon oath, in the course of judicial proceedings, yet if it satisfactorily appear that the party made such admissions inconsiderately, or without full knowledge of the facts, it is proper that the court should relieve him from the consequences of his error.

FROM MONROE.

Appeal from the Chancery Court at Madisonville. W. M. BRADFORD, Ch.

ROBERT PRICHARD for complainant.

McCROSKEY & STEPHENS for defendant.

COOKE, Sp. J., delivered the opinion of the court.

This bill was filed to enforce a mechanic's and furnisher's lien, for an indebtedness upon a contract al-

leged by the bill to have been as follows: "That he, complainant, through his agent, W. F. Fisher, contracted and agreed with W. J. Fowler, the defendant, to furnish two turbine water-wheels, to place them in position and attach one to a saw-mill, and the other to the grist-mill of the defendant, and put them in good running order. The wheels were to be respectively of twenty-four and thirty inches. The twenty-four-inch wheel to be furnished for the sum of $150, the thirty-inch wheel for $200, said sums to be due and payable from and after the completion of the work." The bill avers that the work was completed on or about the month of April, 1879. That complainant is entitled to interest from that time, but that the respondent is entitled to a credit upon the above amount for the freight paid by him upon said wheels from York, Pennsylvania, to the railroad station at which he received them, but complainant does not know the amount of the freight so paid by respondent. It is further averred that said wheels were furnished and the work was performed, as complainant is informed and believes, as was undertaken and agreed by the contract aforesaid, and the work, machinery and mills to which the same were attached, were all turned over to, and received by the respondent, after the completion of the work as aforesaid, without objection or fault by defendant, except that he was dissatisfied with the thirty-inch wheel, attached to the saw-mill, claiming that it did not give enough power, and that complainant, by his agent aforesaid, proposed to remedy this even if it could only be done by the substitution

of a new wheel at complainant's expense, but respondent refused to allow this proposition performed until the next fall, by which time complainant would lose his lien, and has retained and used said mills, machinery and wheels, and still retains and uses them, but will not pay for them, and seeks to have his furnisher's and mechanic's lien declared and enforced upon said mill and premises for the satisfaction of his said demand, etc. The respondent filed his answer to the bill, by which he says he admits it to be true "that complainant, by his agent, W. F. Fisher, agreed and contracted to furnish complainant with two turbine water wheels, to be respectively twenty-four and thirty inches, to place them in proper position, and to put them in good running order, for the respective prices alleged, that is, the price of the twenty-four-inch wheel properly attached, and in good running order, was to be $150, and the price of the thirty-inch wheel properly attached and in good running order, was to be $200. But he denies that said wheels were furnished, the work completed and turned over to him, without objection on his part ; but on the contrary, says he did object, at the time the work was completed, and complained in the presence of said Fisher, that the wheels did not perform the work guaranteed, and which was admitted by said Fisher. Denies that complainant *agreed* to remedy the defects of the thirty-inch wheel by substituting another wheel at complainant's expense. Says it is true some propositions were made to furnish another wheel, but all the expenses were to be borne by the respondent. Says he paid as freight

upon said wheels $55, and denies that he is indebted to complainant as charged, because he says complainant has failed to comply with his contract, in furnishing said wheels, and attaching them to the saw-mill and grist-mill."

He then proceeds, by way of cross-bill, to allege and charge "that complainant agreed to furnish said wheels described in complainant's bill, to attach the thirty-inch wheel to respondent's saw-mill, and the twenty-four-inch wheel to his grist-mill, and to put both wheels in good running order. Said contract was made with W. F. Fisher as the agent of complainant, *all of which appears from the allegations of complainant's bill."* He then proceeds to allege that under said contract, the thirty-inch wheel was guaranteed to give seventeen and three-quarter horse-power under eleven feet head. The twenty-four-inch wheel was guaranteed to give satisfaction, and to derive its power from water supplied from the same forebay, and was guaranteed to run successfully and simultaneously with the thirty-inch wheel, which was to run the said mill. But he charges that the thirty-inch wheel does not give ten-horse power, and that the twenty-four-inch wheel does not give *satisfaction by half,* in what it was represented, when run at the same time with the said mill. That it was further guaranteed for the thirty-inch wheel that it would give power to saw from 4000 to 8000 feet of lumber per day, but that it cannot saw exceeding 1500 feet of soft lumber when run by itself, and when run in connection with the twenty-four-inch wheel its power is still diminished.

That complainant failed to comply with his contract, in placing said wheels in position and attaching one to the saw-mill and the other to the grist-mill *as alleged in complainant's bill.* Respondent would show that the expenses of putting in and attaching said wheels were paid by him, and were not less than $300, and for which amount, *according to the allegations in the bill,* complainant is responsible to respondent. He further charges that by reason of complainant's failure to comply with his contract, respondent was damaged not less than $500, and prays for a decree against the complainant for all moneys and expense paid or incurred as freights on said wheels, and expense in putting in and attaching the same to the saw and grist-mill, and for the amount of damages sustained by him by reason of complainant's having failed to comply with his contract, etc.

In his answer to said cross-bill, the complainant, Smith, says: "It is true he did furnish to said Fowler the two wheels described in said cross-bill, through his agent, Fisher, and that he is informed and believes that his said agent warranted said wheels to give a certain power to each according to the description and instructions laid down in a certain book furnished to said agent by the respondent, and that said agent, in accordance with said book, guaranteed that the thirty-inch wheel would give, under eleven feet working head, seventeen and eighty-four one-hundredths horse-power, which is ten-horse power short of the power necessary to run a fifty-two-inch solid tooth saw, and the twenty-four-inch wheel would give, under eleven feet working

head, ten and eighty-five one-hundredths horse power,. and these are the warranties he made or was authorized to make, and avers that said wheels, if properly put in, in accordance with instructions laid down on pages 65 and 66 of said book, do give the amount of power as tabled and guaranteed. He denies that he, or his agent, *guaranteed* the said wheels, or either of them, would give satisfaction further than stated above, and that said Fisher's work should be done properly, the latter, however, this respondent had nothing whatever to do with, it being a matter between Fowler and Fisher, as individuals, and not in his capacity as agent. That it is not true that said wheels were guaranteed to run simultaneously and successfully from same forebay, unless forebay and flume be constructed and located in accordance with instructions laid down on pages 65 and 66 of the book of instructions concerning wheels as aforesaid. He further denies the allegations of the cross-bill as to the amount of lumber, etc., which said wheels were to give power to saw, and avers that his agent informed respondent Fowler that a thirty-inch wheel would not saw that amount of lumber and was too small to run a fifty-two-inch saw, such as respondent's, and advised him to order a larger one, which he declined to do, but voluntarily chose the thirty-inch wheel, after examining said book and the capacity of different sized wheels, etc., and that said book contained specific directions as to how said wheels should be put in, etc., and then proceeds as follows: "Respondent has no means of knowing what expense was incurred by complainant in attaching said wheels.

to his mill, and therefore cannot either admit or deny that it amounted to $300." * * It is not true that this respondent failed to comply with his contract in attaching said wheels to the mills, for he was no further or otherwise connected with putting in said wheels than that his agent, Fisher, contracted and agreed as agent, that the complainant (Fowler) should not be called upon to pay for them until after they were put in and properly attached, and then prove themselves to be and do as guaranteed in wheel book. Although the wording of the original bill would indicate that respondent had contracted to sell, and also put in said wheels, yet the facts are that he was only to furnish the wheels at a certain price, through his agent, Fisher. That said Fisher, while he was respondent's agent, was also a mill-right, and generally, as in this instance, when he sold wheels for this respondent, at the same time contracted on his own account and not as agent to put them in. Respondent denies that he is liable for any damage resulting from a non-performance of a contract made for putting in said wheels, or resulting therefrom." And denies further that complainant has suffered any damage from his fault or misrepresentation, or in any other respect for which he is entitled to recover, etc.

We have made these copious and extensive extracts and statements of the pleadings in this cause, for the reason that the principal question to be determined in the case arises upon them. It will be observed that the complainant in the original bill, which was sworn to, states the contract to have been, in substance, that

he was to furnish the wheels and attach one to a saw
and the other to a grist-mill, and put them in good
running order, for the aggregate sum of $350 less the
freight upon the transportaion of them, payable when
the work was completed. · This bill was sworn to be-
fore a notary public in York, Pennsylvania, the place
of residence of the complainant, and was evidently pre-
pared and sent to him for that purpose, as it is signed
by local counsel, and it is manifest upon the face of
the bill that it was sworn to from information and
belief. The answer of the respondent admits this part
of the contract *to be as stated in the bill,* and in
the cross-bill charges this part of the contract alleged
by it in the same terms, and cautiously adds, "as
charged by complainant in his bill." The complain-
ant, when he comes to answer the cross-bill, which is
also made under oath, denies that the contract was as
thus alleged, and states that although the wording of
the original bill would indicate that this respondent
had contracted to sell, and also put in said wheels,
yet the facts are that he was only to furnish the wheels
at a certain price through his agent, and that respondent
Fowler made a contract with Fisher, who was a mill-
wright, to put them in on his own account. The
proof abundantly shows that this statement of the con-
tract contained in the answer of the complainant to
the cross-bill, is the true statement of the terms of
the contract, while the agent, Fisher, and a brother
of his, whose depositions were taken by the complain-
ant, as well as one of the hands taken by respondent,
all concur in stating that they were employed and

Smith *v.* Fowler.

paid by respondent Fowler to put in and attach these wheels, the Fishers alone having been paid near $200. And while the testimony all concurs to establish the contract of purchase of the wheels to be substantially alleged by the answer of the complainant Smith to the cross-bill, yet the respondent Fowler does not offer to testify himself in the cause. It is worthy, moreover, to remark, that according to the allegations of the cross-bill, Smith was bound to pay more for putting in the wheels than the price he was to get for them.

The chancellor dismissed the cross-bill and decreed upon the original bill in favor of complainant, the amount agreed to be paid for said wheels, less the freight paid by the respondent.

The Referees have reported that the complainant must be held to pay for the value of the work of putting in said wheels, which they estimate at $200, upon the idea that the complainant is bound by the allegations of the original bill, although they say the proof shows that Fisher contracted to do this work in his individual capacity, and he and the other hands were employed and paid for doing this work by respondent Fowler.

We do not concur in this conclusion, while the doctrine of estoppel applies with peculiar force to admissions or statements made upon oath, in the course of judicial proceedings, yet if it satisfactorily appear that the party made such admissions inconsiderately, or without full knowledge of the facts, it is proper that the court should relieve him from the consequences

of his error: *Hamilton* v. *Zimmerman*, 5 Sneed 39; *Seay* v. *Furgusson*, 1 Tenn. Ch. R., 287.

We think it is manifest that the allegations of the original bill, as to the terms of the contract were made under a misapprehension of the facts, and that they were correctly stated as shown by the proof in the answer to the cross-bill, and by which the allegations of the original bill were corrected and explained, and from the whole pleadings taken together, the real terms of the contract sufficiently appear and are clearly sustained by the proof.

Nor do we think the respondent has shown himself entitled to any relief under his cross-bill. It fully appears that the pamphlet or book spoken of in the pleadings was placed by said agent in the hands of the respondent, and that he was made acquainted with its contents, and which showed the various sizes and capacity of the different wheels sold by the complainant, as well as the terms upon which they were sold, and also the warranty that was made in relation to them, which was as follows: "I warrant my water-wheels to be built of good materials and excellent workmanship, *and if properly set and used*, to render the highest practical results attainable by any water-wheels known—overshot not excepted. In case of failure to come up to the above warranty, *they may be returned to me within ninety-days from the date of my shipment*, and any money paid me on such wheels will be promptly refunded. S. M. Smith."

Terms: "I offer my water-wheels delivered on board the cars at York, Pennsylvania, at my present list

price, payable within sixty-days from the date of shipment. Parties unknown to me will be required to give satisfactory reference or accompany their orders with cash, for which I allow a discount of five per cent. In all cases the wheels to be subject to my present warranty rules, unless otherwise agreed upon in writing."

Said book also contained tables showing the power of said wheels under different heads of water, by which it was shown that a twenty-four-inch wheel, under a eleven feet head of water, possessed ten and sixty-five one hundredths horse-power, and a thirty-inch wheel, and under the same head, seventeen and eighty-four one hundredths horse-power. Said book also contains specific directions as to the manner in which said wheels must be put up and attached. Fisher testifies that he gave respondent one of these books, that he knew its contents, that he made no warranty or representation in relation thereto or guaranty except such as were contained in said book. That he sold said wheels to respondent at less than the published price, and for that reason received no commission upon said sale; that said thirty-inch wheel was too small to run the saw of respondent, which was a fifty-two-inch saw, and that he so advised him, and also advised him to purchase a larger wheel, which he declined to do, and ordered this one in controversy.

The complainant testifies that these wheels, if properly put up, and attached according to the instructions given in said book, have the capacity or horse-power as thus represented, and there is no countervailing

testimony on this point.    There is no effort to show, by any testimony whatever, that there was any defect, structural or otherwise, in said wheels.    The proof does show, as they were put up and attached, they did not possess the amount of horse-power as represented in said book, but the respondent Fowler, himself, in a long letter written to the complainant in regard to the matter, undertakes to explain this deficiency by the fact, as he states, that the mouth of the "penstock" is too small to admit sufficient water upon the wheel, and that the pit underneath is too shallow, and the tail race too narrow to allow the water to escape, and thus causes it to regurgitate upon and obstruct the wheel.    He does not allege or allude to any defect or imperfection in the wheels themselves. He failed to return said wheels according to the requirements above stated, and refused to allow them, or the one complained of, to be changed, and with all this proof against him the respondent does not offer to counteract it, even by his own testimony, but relying upon the allegations of complainant's original bill, claims not only that he has over paid the price of said wheels, by putting them in position and attaching them to his mill, but that he is entitled to $500 damages in addition.

We think upon the whole case the chancellor's decree was correct, and it will be affirmed with costs.