# B. F. CLINTON v. PAUL W. GANT. —337 S. W. (2d) 761

Middle Section at Nashville.   July 1, 1960.

Certiorari Denied by Supreme Court September 9, 1960.

Walter H. Griswold and W. G. McDonough, McMinnville, for plaintiff.

McAllen Foutch, Smithville, and C. L. Cornelius, Nashville, for defendant.

HUMPHREYS, J.  This is an appeal by Paul W. Gant, defendant below, from a decree of the Chancery Court at McMinnville, in favor of Darrell Walling, guardian for B. F. Clinton, incompetent, in the amount of $6,500.

These are the facts out of which this controversy arose: In the summer of 1948, defendant, Gant, who was working as a sales representative for Gulf Oil Company, learned the company contemplated a change in the McMinnville distributorship then held by complainant, B. F.

Clinton. Gant contacted Clinton, and after negotiations the two drew up different contracts, trying to arrive at terms suitable to themselves and to Gulf Oil Company, represented in the proceedings by Mr. J. W. Bye, Jr., the District Manager, with offices in Chattanooga. Clinton and Gant went to Chattanooga to discuss the matter with Bye taking at least two different contracts duly signed and acknowledged before notaries public. As the result of these negotiations, one of the contracts was agreed on and the parties understood there was a written contract existing between them, and on September 1, 1948, Gant took over the Gulf Oil distributorship at McMinnville and began paying Clinton $250 per month, making such payments through December, 1957, in accordance with the understanding of both parties. On January 3, 1958, Gant wrote Clinton a letter in which he advised him no further payments would be made under the contract until another contract could be negotiated clarifying the old contract, and that payments would be held in escrow until such time. This action was taken by Gant for the following reasons. He had interpreted the contract between himself and Clinton as creating a partnership arrangement which would permit him to deduct in determining his net income for federal income tax purposes the money paid to Clinton. The Collector of Internal Revenue declined to put this interpretation upon Gant's contract, so Gant entered into proceedings in the United States Tax Court where it was determined the contract did not create a partnership. Thereafter, Gant wrote the letter aforementioned. In July, 1958, Clinton, who at that time was residing in Madison County, Alabama, employed counsel, Walter Griswold and John Green, and brought suit against Gant for the monthly payments of

$250 each for the months of January, February, March, April, May, and June of 1958, under the contract of August, 1948. The contract on which Clinton declared was exhibited to his bill. By this contract, which was signed by both Clinton and Gant and acknowledged by each before a notary public, it was stipulated that Clinton, a distributor of Gulf Oil products under contract with Gulf Refining Company in certain territory, owned equipment valued at $6,565; that Clinton desired to retire and turn over his contract to Gant for which a new contract would be issued by the Gulf Refining Company in the name of Gant; that Gant would purchase a one-half interest in the equipment for $3,282.50; that in further consideration of transfer of the distributorship Gant agreed to pay Clinton $250 a month out of the income of the business for Clinton's life and such payments "are to be guaranteed to me by the said Gant, or his successors or assigns in the contract aforesaid", the contract between Gant and Gulf pertaining to the distributorship. It was further stipulated: That the one-half interest in the equipment not transferred by the contract to Clinton should be amortized over a period of two years from the date of the contract and at the expiration of the two years the whole of the equipment should become the property of Gant; that Gant bound himself to see the provisions of the contract were carried out in any contract between himself and the Gulf Refining Company, "the mutual prime object of this agreement being that said B. F. Clinton should be assured of a monthly pension income of $250.00 per month on account of his long service with Gulf Refining Company." The agreement became effective in September 1948.

In February, 1959, defendant answered denying he was indebted to the complainant in the amounts sued for. He averred the contract exhibited by Clinton to his bill, although signed by both Clinton and himself, was not the contract between the parties. That he did not have and never had a copy thereof and had assumed that a contract bearing the signatures of complainant and himself and acknowledged by the parties on August 14, 1948, and exhibited to his answer, was the contract between the parties, but that there were such material differences in the two contracts, the one sued on and the one presented by his answer, that it now appeared the parties never reached an agreement, and there was no contract. The answer set up that defendant had honestly believed and understood the contract exhibited to his answer was the only written contract between the parties and had relied on it as such in the United States Tax Court for redetermination of tax deficiencies with respect to the joint income tax returns of himself and his wife. The answer averred further that any contract which might be implied in fact or law from the facts and circumstances of the transaction between himself and complainant had been fully discharged by the payment to complainant by defendant of an amount far in excess of the reasonable value of the property and the distributorship.

The contract exhibited to the answer is practically identical with the contract exhibited to the bill except that it obligates Gant to pay Clinton the sum of $250 per month ''out of the income of the business'' only as long as the distributorship contract continued with Gulf, while the contract exhibited to the bill provides that the payments of $250 per month for the life of Clinton ''are to be guaranteed to me by the said Gant, or his successors or

assigns in the contract aforesaid," that is, the contract between Gant and the Gulf Company pertaining to the distributorship.

In October, 1959, the suit was revived in the name of Darrell Walling, guardian of B. F. Clinton, Clinton having been decreed incompetent, and Walling having been appointed his guardian. In February, 1960, Darrell Walling, as guardian, amended to sue for all of the monthly payments to that date, and, in addition, amended the original bill by averring that at the time of the filing of the original bill Clinton had in his possession the contract filed as exhibit thereto, and also had in his possession the original copy of the contract filed as an exhibit to the defendant's answer. It was averred that since defendant had no copy of the contract filed originally as an exhibit to the bill and since both complainant and defendant had copies of the contract filed as exhibit to defendant's answer, and that since defendant had recognized the contract exhibited to his answer as the contract between the parties and had complied with the terms and conditions thereof from August 14, 1948, up to and including December, 1957, by paying the sum of $250 per month to the complainant, the court should hold it to be the contract between the parties. To this amendment the defendant pleaded estoppel.

Upon these facts and pleadings the Chancellor held: That by his answer the defendant had assumed the burden of affirmatively showing there was no contract because of an alleged repugnancy between provisions of the instrument averred by him to constitute the contract between the parties and that sued on in the original bill by complainant; that the only repugnancy between the

two instruments was with respect to future contingencies; that the right to rely upon the future contingencies would not mature until one of the two contingencies had happened; and, that this affirmative defense was therefore premature and could not be considered. That the contracts insofar as they were the same in intent and meaning, were actually one contract, and that they could only be attacked as repugnant after the contingencies upon which the alleged repugnancy was based had occurred. He sustained the original bill and gave judgment to complainant in the amount of $6,500 together with interest from January 3, 1958 to date and taxed the defendant with the costs. The defendant has appealed and assigned errors which we will now consider.

There are four errors assigned which are in substance: (1) the written contracts being different in material respects, did not reflect mutual assent and therefore there was no contract; (2) that the defendant carried the burden of his affirmative defense of confession and avoidance and this shifted the burden to complainant, which was not carried when complainant admitted he did not know which memorandum was the contract; (3) that in the absence of an express contract defendant had already paid complainant more than the reasonable value of the property and rights involved; (4) that the pleas of estoppel should have been sustained.

■ On appeal this court will try this case de novo, entertaining, of course, the presumptions in favor of the Chancellor's decree required by law, and make such disposition of it as fairness, justice, and the law dictate.

■ We think the assignments of error must be overruled and the decree of the Chancellor in favor of the

complainant must be affirmed, but not upon the grounds assigned by the Chancellor in his opinion as the basis of his decree. For, we agree with appellant the Chancellor's opinion is erroneous in allowing a recovery upon a consideration of both contracts, and in declining to determine which memorandum was the contract, if either, because the contingencies provided for in the contracts had not occurred, when in fact and in law a recovery could be predicated upon only one of the contracts or there could not be a recovery. The contention of the appellant that there must be an entire, complete contract is sound and sustained by the authority cited in appellant's brief. Barton v. Bird, 1 Tenn. 66, 69; La Compania Bilbaina de Navegacion de Bilbao v. Spanish-American Light & Power Co., 146 U. S. 483, 13 S. Ct. 142, 36 L. Ed. 1054, 1058; 17 C. J. S. Contracts secs. 30-31, pp. 358-360. We think the Chancellor should have held, and we hold, that the contract exhibited to defendant's answer, a copy of which was later exhibited to the amended bill, is the contract between the parties. It is undisputed the contracts exhibited to the bill and answer were prepared in McMinnville, in duplicate, and signed by both of the parties indicating that either of the contracts was agreeable to the signers. The two contracts were then taken to Chattanooga, where one of them was finally selected by the Gulf Oil representatives as the contract. When the defendant returned to McMinnville, he had in his possession only a copy of the contract later exhibited to his answer. He had no copy of the contract exhibited to the bill. So, we know that was not the contract agreed upon. Thereafter, defendant relied on the contract he and Clinton each had a copy of as the contract between himself and Clinton for more than nine years, paying in accord-

ance with its terms and provisions, and in turn enjoying and profiting in accordance therewith; even going so far as to rely on it as the contract in a proceeding in the United States Tax Court. When Clinton returned from Chattanooga, it is evident he had in his possession a copy of the contract first exhibited to his bill and a copy of the contract exhibited to complainant's answer and that he kept both copies. When some nine years later, defendant wrongfully advised him he no longer expected to abide by the writing he himself understood was the contract, and complainant sued for the payments due, declaring in his suit on the wrong copy, do the doctrines of judicial estoppel and in pais estoppel require that this seventy-three year old man, within a year to be found so feeble of mind as to be declared incompetent, shall lose all rights under the real contract because he first sued on the wrong one? We think not.

In Smith v. Fowler, 80 Tenn. 163, complainant sued on a contract, setting forth the details. The defendant answered and filed a cross-bill adopting the allegations of complainant's bill. Complainant then filed an answer to the cross-bill, the substance of which was to deny the contract as set out in the original bill and the answer and cross-bill. The decree of the Chancellor held the complainant to the allegations of the bill although the proof in the case indicated the contract was as set up by the complainant and cross-defendant in his answer to the cross-bill. The Supreme Court reversed saying: "We do not concur in this conclusion, while the doctrine of estoppel applies with peculiar force to admissions or statements made upon oath, in the course of judicial proceedings, yet if it satisfactorily appears that the party made such admissions inconsiderately or without full

knowledge of the facts, it is proper that the court should relieve him from the consequences of his error." (Citing cases.) In the case of D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 520, 206 S. W. (2d) 897, 906, the Court said: "While judicial estoppel applies where there is no explanation of the previous contradictory sworn statement * * *, it does not apply where there is an explanation showing such statement was inadvertent, inconsiderate, mistaken, *or anything short of a 'wilfully false' statement of fact.*" (Our emphasis.)

Although no explanation is offered for this mistake by the testimony of Clinton who is incompetent, it is an understandable mistake. The contracts are practically identical, and because of the lapse of time Clinton, soon to be declared of unsound mind, must have become confused as to which was the contract. It appears that defendant, who did not file an answer for eight months, never noticed that the contract declared on was not the one agreed on at Chattanooga until this fact was brought to his attention by counsel. It could hardly have been Clinton's intention to select the most advantageous contract and falsely declare on it, because he knew defendant had a duplicate copy and nothing could be gained thereby. Moreover, he was not suing on the proviso relating to the contingencies, and could secure no direct or immediate benefit from choosing the wrong copy on which to sue. Although the legal propositions relied on by appellant are solid, and it would be possible to predicate an opinion and decree thereon, we think fairness, justice, and equitable considerations dictate that we hold the contract exhibited to the answer to be the contract between the parties and that the doctrines of estoppel of record and in pais do not apply; that reliance upon the contract first

exhibited to the bill, while a mistake, was not a "wilfully false" mistake and there are no facts to make the doctrines of estoppel in pais or judicial estoppel operative.

In accordance with the foregoing, we hold that the contract between the parties is that contract exhibited to defendant's answer, and that complainant Walling is entitled to recover as guardian of Clinton upon that contract for those payments sued on in the pleadings. However, we do not think that Clinton, who unquestionably was guilty of negligence in declaring on the wrong copy of the contract should go scot free, and that defendant should be held to respond as though this had not occurred. So, we hold that interest shall accrue on this judgment only from the date of entry thereof in this court, and we tax the appellee with the costs of the cause. Let a decree be entered accordingly.

Hickerson and Shriver, JJ., concurring.